MARGARET BARBARO, BY CURATOR, Respondent, *v.* THE OCCIDENTAL GROVE No. 16, AND THE GRAND GROVE OF THE UNITED ANCIENT ORDER OF DRUIDS OF MISSOURI, Appellants.

## November 6, 1877.

1. One for whose benefit a promise is made may sue upon it, though not privy to the contract.

2. The subordinate groves of the Ancient Order of Druids, having been created for the purpose of carrying into effect the objects of the Grand Grove, have the power to bind themselves and the Grand Grove by acts done within the scope of their authority.

3. Where an association assumes a name which implies a corporate body, exercises corporate powers, performs acts and contracts as a corporation, it will be estopped from denying that it is a corporation and liable as such.

4. Where one of the main objects of a corporation is to aid the families of deceased members, the payment of a sum of money to the surviving family of a deceased member is not a violation of a charter provision against doing an insurance business.

5. In an action before a justice of the peace, if the statement filed advise the opposite party of the nature of the claim, and is specific enough to be a bar to another action, it is sufficient.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

J. D. JOHNSON, for appellants : A judgment erroneous as to one defendant is erroneous as to both. — See *Smith* v. *Rollins*, 25 Mo. 408 ; *Pomeroy* v. *Bets*, 31 Mo. 419 ; *Covenant Mutual Ins. Co.* v. *Clover*, 39 Mo. 392 ; *Farmers' Bank, etc.*, v. *Bayless*, 41, 274.   Corporations must have

a name. — Ang. & Ames on Corp. 99 ; Smith's Merc. Law, 133. Corporations can make no contracts except such as are either expressly provided for in their charter, or such as are necessary to carry into effect their corporate powers. — Ang. & Ames on Corp., 11th ed., secs. 256, 239 ; Story on Con., sec. 394 ; *Ruggles* v. *Collier*, 43 Mo. 375 ; *Hannibal & St. Joseph R. Co.* v. *Marion County*, 36 Mo. 294 ; *City of St. Louis* v. *Weber*, 44 Mo. 547 ; *Blair* v. *Perpetual Ins. Co.*, 10 Mo. 360. Estoppel. — Ang. & Ames on Corp. 239, at bottom.

F. L. LINTON and W. F. ROGERS, for respondent : Estoppel. — *United States Express Co.* v. *Bradbury*, 34 Ill. 459 ; *National Ins. Co.* v. *Bowman*, 60 Mo. 252 ; *Stoddard* v. *Onondaga Annual Conference*, 12 Barb. 573 ; *East River Bank* v. *Rogers*, 7 Barb. 493 ; *Dutchess Cotton Man. Co.* v. *Davis*, 14 Johns. 238. Agency. — Story on Ag., secs. 160, 161, 278, 291, 300.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding begun before a justice of the peace, to recover the sum of $49.80, being a quarterly payment of $6 per quarter, said to be due plaintiff by the Occidental Grove No. 16, as a quarterly stipend, payable, by the by-laws of the association, to her from the date of her father's death in good standing in the order and a member of Occidental Grove No. 16, until she became twelve years old. The complaint charges that the defendant, the Grand Grove of the United Ancient Order of Druids, " is the trustee for all funds intended for beneficial purposes of the said union, and that, as such, the said Grand Grove superintends and controls the disbursing thereof, and is responsible for all acts of subordinate groves in said union." On trial anew in the Circuit Court, evidence was introduced by plaintiff, tending to show that she was born December 11, 1859, and that her father died October 14, 1869, being then in good standing and having paid his dues as a member of Occidental

Grove No. 16, which was an organized body working under the jurisdiction of the Grand Grove, and having a constitution and by-laws imposed upon it by that body.

The charter of incorporation offered in evidence (Sess. Acts 1865, p. 224, etc.) recites in its preamble that an association called the United Order of Druids has been formed and organized in the State of Missouri, under the name of " The Grand Grove of the United Ancient Order of Druids of the State of Missouri," for the purpose of " rendering aid and comfort to the members and the families of the members thereof, in case of accident, sickness, or death, and of making provision against calamities to which men are liable;" and that, as the members are being divided into subordinate groves, working under the authority and jurisdiction of the Grand Grove, for the more complete organization of the Grand Grove it should be invested with corporate powers and certain privileges. The act of incorporation gives to the Grand Grove the power of acquiring and holding property for its own use, not exceeding $50,000, as well as in trust for subordinate groves organized under its authority and direction and jurisdiction. Section 2 gives the Grand Grove power to adopt by-laws for itself and for the subordinate groves working under it. Section 3 provides that any subordinate grove may acquire and use all kinds of property in the name of the Grand Grove, such property to be used only for the purpose of creating a fund for aiding the sick and distressed and burying dead members of the Order of Druids ; for aiding the families of deceased, sick, or needy members of the order ; for relieving generally the distressed ; for maintaining schools, and for other benevolent purposes set out in full ; and further provides that, should any subordinate grove fail to apply the property in their possession for the purposes designated, or misapply the same, or disobey any lawful orders of the corporation, their property, whether such grove be incorporated or not, shall be forfeited to, and vest in, the Grand

Grove; and no subordinate grove can sell this property without consent of the Grand Grove. Section 4 provides that the Grand Grove shall enforce the proper application of property by the subordinate groves, or take away the same, at its discretion. Section 6 provides that any subordinate grove working under the Grand Grove is hereby created a body corporate, with the same powers and privileges as the Grand Grove, as long as the same are in good standing with the Grand Grove. Certain clauses of the charter and by-laws of the Occidental Grove were also offered in evidence, among which are a provision of the constitution that the widows and orphans of deceased brothers shall be assisted in such manner as the by-laws shall provide, and that the benefits secured to sick brothers and their families shall be regarded as dues, and not as a charitable donation; and a by-law that each orphan of a deceased brother in good standing at the time of his death shall be entitled to receive $6 per quarter for their maintenance until they arrive at the age of twelve years. Also, by-laws providing for the payment of a certain weekly sum to a sick member, and provisions for paying the funeral expenses of a deceased member. There was a verdict and judgment for plaintiff; and defendants appeal.

An instruction at the close of plaintiff's case, in the nature of a demurrer to the evidence, was refused by the court.

At the instance of defendants, the court instructed the jury that, in order to find for the plaintiff, they must believe from the evidence that the Occidental Grove had or has property, in the name of the Grand Grove, creating a fund for aiding plaintiff and others in her situation. The same proposition was embodied in the instruction given for plaintiff at her instance. The court also instructed the jury, at the instance of defendants, that, to find for plaintiff, they must believe from the evidence that defendants have a fund for the payment of claims like that of plaintiff. The court refused an instruction asked by defendants to the effect that

there was no evidence tending to show a contract between deceased and the Occidental Grove on which to base the action ; and also refused the following instruction, asked by defendants :

" The court instructs the jury that if they find from the evidence that the contract under which plaintiff seeks to recover in this action is a contract of life insurance, then the plaintiff cannot recover, and they should find for the defendants ; and the jury are instructed that a contract of life insurance arises in all cases where a person pays a stipulated or specific sum or sums in his lifetime, from time to time, with the understanding or agreement in consideration of such payment or payments are made, shall, in the event of the death of the party paying the same, pay to his widow or heirs a specified sum or sums of money."

It is contended by appellants that the cause of action is not a contract between plaintiff and the Occidental Grove or its co-defendant, and that there is no evidence of consideration. There was evidence, we think, of a contract, supported by a sufficient consideration, between the deceased and the Occidental Grove, that, in the event of his death, they would pay the amount sued for to his orphan child. As the promise was made for the benefit of plaintiff, she might sue on it, though not privy to the contract. *Beardslee* v. *Morgner*, *ante*, p. 139.

It is urged that, if there was a contract, the Grand Grove was not a party to it, and the judgment against the Grand Grove was, therefore, bad. The subordinate groves of the Grand Grove of Druids would seem to be the authorized agents of the Grand Grove for disposing of its funds and making contracts with the individual members of each several subordinate grove, of the character of the one in suit, binding both the subordinate grove and the Grand Grove. The Grand Grove holds its property as trustee for the subordinate groves, retains a superintending control over their disposition of all property, whether held in their name or

in that of the Grand Grove, and has power to make by-laws for them, and thus control all their actions. The subordinate groves, under the scheme of this association, are bodies created for the purpose of more effectually carrying out, in their minute details, the charitable purposes for which the main organization exists. Whilst each subordinate grove is a distinct organization, by all acts within the scope of its authority it has power to bind itself individually, and also the Grand Grove, of which it is the agent. We think that the evidence in this case shows a contract with deceased, made by Occidental Grove No. 16 in its own name, and also as agent for its co-defendant, the Grand Grove. There is no reason why an agent may not make a contract binding upon himself and his principal, and we think that this is what the Occidental Grove in this case intended to do, was competent to do, and did.

It is said that the Occidental Grove is not shown to be a corporation ; that the act was intended to incorporate subordinate groves, but failed of its purpose by reason of the vagueness of its provisions. However this may be, we think it clear that it does not lie in the mouth of these defendants in this action to deny the incorporation of the Occidental Grove. Where an association of persons assumes a name which implies a corporate body, and exercises corporate powers, they should not be heard to say they are not a corporation. When they do acts, and contract, they are estopped from denying their corporate liability. *United States Express Co.* v. *Bedbury*, 34 Ill. 466 ; 12 Barb. 570.

It is further objected that the contract sued on is a contract of life insurance, and *ultra vires* because expressly prohibited by the charter of the Grand Grove, and not necessary to carry into effect the objects of the corporation. The charter of the Grand Grove names as one of the main objects of the corporation, "aiding the families of deceased members." The payment of a small stipend to the helpless children of a deceased member seems to be a very

reasonable way of carrying out this provision; and though the last clause of section 1 of the charter provides that " the powers hereby granted shall not be used for banking or insurance purposes," it is clearly not the intent of that provision to prohibit the payment of money by the corporation to the surviving representatives of deceased members. The corporation is not to carry on an insurance business, in the usual acceptation of the term in the commercial world. We see nothing in the by-law cited in evidence which violates this provision of the charter.

The instructions on both sides assume that no recovery ought to be had in this case unless the evidence shows that the Occidental Grove had funds held in the name of the Grand Grove for the purpose of paying the benefits claimed by plaintiff. As there is no evidence whatever as to whether either of the defendants had any funds at the time of, or since, the death of Barbaro, if this fact were essential to be proved the judgment must be reversed for want of evidence to support it. If defendants agreed with plaintiff, for a sufficient consideration, to pay a quarterly allowance to his child after his death, we do not see why they should not be held to their contract, or how they would be relieved from their obligation, even if it should appear affirmatively that they had no funds. Appellants contend that the moneys received by the groves could, under the provisions of the charter, be applied only to the accumulation of a fund of $50,000, and that this was the object of the organization of the society. The groves have, under the charter, the power of acquiring property to that extent, and no more; but it is nowhere said, or implied, that the income and property of the groves may not be applied to relieving the families of deceased members of the society, though the charter does expressly provide that these funds shall be used for no other purpose than this and kindred objects.

The complaint alleges that defendant, the Grand Grove,

is the trustee of the funds of the united societies; and it is claimed by appellants that this is, therefore, a proceeding in equity against the Grand Grove, of which a justice of the peace has not jurisdiction, improperly joined with a proceeding at law against Occidental Grove No. 16. No formality is required in the statement of a case before a justice. It is enough if it advise the other party of the nature of the claim, and is specific enough to be a bar to another action. This has been often decided. The statement in this case is, we think, sufficient for these purposes, although it is inaccurately drawn.

The record is by no means free from errors, but we see none of which defendants can complain, or which warrant a reversal of the judgment. The judgment of the Circuit Court is affirmed. All the judges concur.