Mordecai *vs.* Beal.

MORDECAI *vs.* BEAL.

1. The best evidence the subject admits of, must always be produced; and if evidence of an inferior grade is offered, it raises the presumption, that the higher testimony is withheld for some sinister purpose.

2. Before evidence of an inferior grade is permitted to be adduced, the court will require satisfactory proof that better evidence is not voluntarily withheld; and the sufficiency of such proof is a question for the discretion of the court, to be governed by the circumstances of the case.

3. Where a party proved, that a deed under which he claimed a personal chattel once existed, and was in the possession of one who had intermarried with the grantee of the deed, and resided beyond the limits of the State; that the deed had been demanded, but not produced; that enquiry had been made without effect of other persons, who, it was supposed, might -have possession of it; and where there was an offer to prove its contents by a registered copy,—it is sufficient—and inferior evidence of the contents of the deed may be admitted.

4. The assent of an executor to a legacy, vests in the legatee the legal title,—the assent having relation to the will, the source of the legatee's title.

5. But an executor cannot, by any act under pretence of assent, enlarge or abridge the title of the legatee.

6. Where one, by his will, appointed certain agents to make a division of his personal estate, and in case of the death of either of them, authorised the survivor to appoint others in the place of those deceased, to assist in making the division—a recital contained in a paper, purporting to be the evidence of such division, and made by agents purporting to have been appointed by the survivor, is not sufficient evidence of the fact of the appointment. Proof of the fact, against one not claiming under the paper, purporting to be a division, must be made by evidence *aliunde*.

S P. 67

Error to the Circuit court of Mobile.

Detinue for a slave, tried before Judge *Paul.* Verdict and judgment for plaintiff.

On the trial of this case, plaintiff below offered in evidence a copy of the will of Nathan Beal, and a paper, a copy of which is attached, marked A, purporting to be a division of the property mentioned in the will. He also proved, that he was the person called James A. Miller, in the will; and that the negro sued for, was one of the negroes named in the will; and that the plaintiff was not twenty-seven years old at the commencement of the suit; and that the negro was in possession of defendant, when the suit was brought. He also proved by B. S. Smoot, that the paper signed by him, and marked A, was made at his house, in Mobile, on the day it bears date; and it was admitted that no one of the negroes was present at the time, and that none of them were ever shown to the persons who signed said paper before or afterwards. Upon this proof, the plaintiff rested.

Defendant then offered to prove by John Philips, that after the making of the will, and in the life time of Beal, the testator, he was present at the house of said Beal, in Washington county, when he, said Beal, sold and delivered the negro sued for, with several others, to Sarah Garnet, who received possession of the same, and retained the same during the life time of said Beal. That Beal died in eighteen hundred and eleven, or eighteen hundred and twelve, and that Sarah Garnet continued in the possession of the slaves, until eighteen hundred and thirteen, when she intermarried with John S. Devin, who took possession of the negroes in right of his wife,

Mordecai *vs.* Beal.

and retained the possession thereof, until eighteen hundred and sixteen, or eighteen hundred and seventeen, when he sold the negro in this suit mentioned, to Thomas J. Strong, who retained possession thereof, until eighteen hundred and twenty-one, when he died. Plaintiff's counsel asked the witness, if there was any deed of the sale of said negroes, to said Sarah Garnet, and upon his answering in the affirmative, the court excluded the testimony offered, until the deed should be produced, or its non-production accounted for. To this decision, defendant excepted.

Defendant then offered to prove, that enquiry had been made of John S. Devin, for the deed, who could not produce it. He also offered to read an affidavit of John S. Devin, that the deed was mislaid, and to prove that Devin was in Florida, beyond the jurisdiction of the court; and also that enquiry had been made of other persons, who might be presumed to have the deed, and that it could not be found. Defendant also offered a copy of the deed, taken from the records of Washington county, and a witness to prove that the copy was a correct transcript of the original. The court declined receiving the evidence, as insufficient to prove the loss of the deed; to which defendant also excepted.

Defendant then moved the court to instruct the jury, that if the property in question was held adversely to the claim of the defendant, at the time the paper purporting to be signed by Smoot and others was made, that the paper was void, and gave no right to the plaintiff. This the court declined, and instructed the jury, that the paper operated as a legal division of the property; to which defendant excepted.

The will was dated on the twenty-eighth of March, eighteen hundred and nine, and declared, that for the natural love and affection, the testator had towards Sarah Garnet, and Jacob Garnet, and James Augustus Miller, and any other children the testator might have by Sarah Garnet, "I give and grant them the following negroes, accounts, notes, &c., viz. one negro man named Dick, one negro Joe, one boy named Ned, one boy named Cupid, one boy named Jack, one woman named Rose, one named Minerva, one girl named Hetty, together with their increase; and also the stock of horses, cattle, and hogs, together with the bonds, debts, and book accounts, that are due me,—to be equally divided between Sarah Garnet, and the children I may have by her, and James Augustus Miller and Jacob Garnet; but it is to be understood, that at the death of the said Sarah Garnet, she is to give her part of the property to the children she may have by me; and if Sarah Garnet has no other children by me, then, at her death, the above named property is to be divided between James A. Miller and Jacob Garnet.

I authorise Lemuel Henry, Sarah Garnet and Thomas J. Strong, my agents, with full power to collect my debts, and make the distribution above stated; and if one or more of them should die, the surviving agent shall have power, and is required to appoint two more agents to execute the trust herein confided," &c.

The paper, marked A, and submitted in evidence by plaintiff, was as follows:

" Whereas by the last will and testament of Nathan Beal, deceased, late of Washington county, the said Na-

Mordecai vs. Beal.

than Beal appointed his wife Sarah, and Lemuel Henry and Thomas J. Strong, to execute the same, with the provision, that if any two of them should die, then, in that case, the survivor was authorised and required to appoint two other persons in their room, place and stead; and whereas the said Lemuel Henry and Thomas J. Strong, have, since the death of the testator, departed this life, and the surviving executrix, Sarah, (now Sarah Devin,) has, with John S. Devin, her present husband, proceeded, under the directions of the said last will and testament, to nominate and appoint; and they have nominated and appointed Benjamin S. Smoot and Samuel H. Garrow, to act with her and the said John S. Devin, under the said last will and testament, as executors thereof, and to execute the same. Now, therefore, know, &c. that we, the said Sarah, (now Sarah Devin,) John S. Devin, Benjamin S. Smoot and Samuel H. Garrow, have proceeded, under the authority given by the said last will and testament, to divide the property therein mentioned, as therein directed; and we have assigned to James A. Beal, mentioned in said last will and testament, by the name of James Augustus Miller,—to hold, to him and his heirs· and assigns forever, as of his and their own property,— that is to say, one negro man named Ned, one negro man named Cupid, one negro man named Joe, one negro boy named General, one named Casey, one' named Bob, one negro woman named Minerva, and one negro woman named Rose, and child.

"In testimony of all and singular the premises, we have hereunto subscribed our names and affixed our

seals, this eighteenth day of October, A. D. eighteen hundred and thirty-five.       (Signed,)

<table>
<tr><td>Witness:</td><td>"Sarah Devin, [L. s.]</td></tr>
<tr><td>"*Charles E. Crane,*</td><td>"J. S. Devin, [L. s.]</td></tr>
<tr><td>"*David Nolan,*</td><td>"Benj. S. Smoot, [L. s.]</td></tr>
<tr><td>"*Charles A. Henry.*"</td><td>"S. H. Garrow, [L. s."]</td></tr>
</table>

The copy of the deed, or bill of sale, taken from the records of the County court of Washington county, offered in evidence by defendant, and excluded by the court, was as follows:

"Washington county, Mississippi Territory:

"Know all men, by these presents, that I, Nathan Beal, of the said county, for, and in consideration of the sum of two thousand eight hundred and seventy-five dollars, to me in hand paid, before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, unto Sarah Garnet, of said county, eleven negroes, viz., Robert, Rose, Jack, Lucinda, Joseph, Dick, Ned, Hetty, Cupid, Nancy and Dinah, to have and to hold said negroes, to said Sarah, her heirs and assigns forever, against me, my heirs, executors, administrators and assigns.

"In testimony whereof, I have hereunto fixed my hand and seal, this ninth of June, eighteen hundred and ten. In presence, &c.

(Signed,)       "Nathan Beal, [L. s."]

ORMOND, J.—Two questions arise in this case:

First—Was the preliminary evidence offered by the plaintiff in error, on the trial in the court below, sufficient to authorise the introduction of secondary proof of the contents of the deed?

Mordecai *vs.* Beal.

Secondly—Was the paper executed by Smoot and others, a legal division of the slaves?

The rule of law is, that the best evidence which the subject admits of, must always be produced; and if evidence of an inferior grade is offered, it raises the presumption, that the higher testimony is withheld for some sinister purpose. Before, therefore, testimony of an inferior grade is permitted to be adduced, the court to whom the preliminary enquiry is addressed, will require satisfactory proof, that the better evidence is not voluntarily withheld.

What shall constitute this satisfactory proof, to authorise the introduction of secondary evidence, cannot easily be reduced to any fixed rule; it is addressed to the discretion of the court, to be governed by the circumstances of the case. The plaintiff here proved, that the deed once existed, and was in the possession of one John S. Devin, who had intermarried with the grantee of the deed; that the deed had been demanded from him, and that he did not produce it; that he now resided in the territory of Florida. It was also proved, that search and enquiry had been made for the deed, of other persons, who it was supposed might have possession of it, but without effect. We think this was sufficient. The plaintiff could have no motive for withholding it, as he offered to prove its contents by a registered copy, thereby repelling the presumption, that the original was withheld, for any improper purpose.

In addition to this, it is important to consider, that the plaintiff never had possession of the deed, and that Devin and his wife, who had once sold the negro in question,

by virtue of a claim asserted under the deed, had after-
wards, as executors of the will of N. Beal, assigned the
same negro to the defendant. It is therefore not to be
wondered at, that the deed is not produced on the de-
mand of the plaintiff. It has been frequently held, that
if an original paper is in the possession of a third per-
son, beyond the jurisdiction of the court, and reasonable
diligence has been used to procure it, without effect, sec-
ondary evidence of its contents may be resorted to—
(Minor vs. Tillotson, 7 Peters' R. 99; United States vs.
Rayburn, 6 Peters' R. 352; Baily vs. Johnson, 9 Cowen's
R. 115; Scott vs. Rivers, 1 Stew. & Por. 19; 13 Johns.
Rep. 58. The case of Bradford vs. Bradford, at the last
June term of this court, establishes the same principle.

It results, from what has been said, that the court erred
in not permitting secondary evidence to be given of the
contents of the deed.·

The division which was made of the negroes, as evi-
denced by the instrument signed by Smoot and othsrs,
is resisted on two grounds. First—That at the time of
the division, the negroes (among whom was the one in
controversy,) were not in the possession of the executrix,
but held adversely, by one through whom the plaintiff
in error claims; and that therefore being the transfer of
a *chose in action*, it does not vest the legal title in the de-
fendant.

The assent of an executor to a legacy, vests in the leg-
atee the legal title; which assent has relation to the will,
the source of the legatee's title; or, in technical language,
he is said to be *in* by virtue of the will. This appears
conclusively, from what is said in the case of Foster and

Mordecai *vs.* Beal.

Miles, cited in Saunders' case, (5 Coke's Rep.) "If lessee for years devise his term to another, and makes his executor, and dies, the executors do waste, and afterwards assent to the devise, in that case, although between the executors and the devisee, it hath relation, and the devisee is *in* by the devisor, yet an action of waste shall be maintainable against the executors."

The division which was made of the slaves, was not only the execution of a power created by the will, but is also evidence of the assent of the executor to the legacy, thereby vesting the legal title in the defendant in error.

We have been referred to the case of Loyd vs. Goodwyn, decided at the present term, (See page 237.) as determining this principle. The doctrine of that case, is, that the sale of a *chose in action*, where an adverse claim was asserted to the property, does not convey the legal title to the purchaser. Its applicabil.ty to this case is not perceived. An executor, by assenting to a legacy, cannot in any sense be said to sell or convey the subject of the legacy. His assent is not the source of the title. To ascertain what that is, recourse must be had to the will. It would be of most mischievous tendency, to adm t that he could, by any act of his, under pretence of assent, enlarge or abridge the title of t e legatee.

Secondly—That it does not appear, that Smoot and Garrow, who, with the executrix, and her husband, Devin. made the division of the slaves, had any authority to act: this objection is well founded. By the will of N. Beal, the power to make the division is given to the executrix, and Samuel Henry and Thomas J. Strong; and, in the event of the death of either, power is given

Mordecai *vs*. Beal.

to the survivor, to appoint others in their place. It is true, that the instrument by which the division is made, recites that Strong and Henry are dead, and that Smoot and Garrow have been appointed by the survivor in their place and stead. But we do not think the recital was proof of the fact against one who did not claim under it. The proof of the fact, must be made by evidence *aliunde*.

Let the judgment be reversed, and the cause remanded.